GEORGE A. KIMBRELL (*Pro Hac Vice*)
PAIGE M. TOMASELLI State Bar No. 237737
KATERYNA L. RAKOWSKY State Bar No. 246248
Center for Food Safety
2601 Mission St., Suite 803
San Francisco, CA 94110
T: (415) 826-2770 / F: (415) 826-0507
Emails: gkimbrell@icta.org
        ptomaselli@icta.org
        kateryna@icta.org

PAUL H. ACHITOFF (*Pro Hac Vice*)
Earthjustice
223 South King Street, Suite 400
Honolulu, Hawai'i 96813
T: (808) 599-2436 / F: (808) 521-6841
Email: achitoff@earthjustice.org

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| CENTER FOR FOOD SAFETY, *et al.*,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>THOMAS J. VILSACK, *et al.*,<br><br>　　　　Defendants. | Case No.: 3:10-cv-04038-JSW<br><br>**PLAINTIFFS' RESPONSE TO QUESTIONS RAISED IN ORDER REQUIRING SUPPLEMENTAL CLARIFICATION**<br><br>Date:<br>Time:<br>Judge: Hon. Jeffrey S. White<br>Place: Courtroom 11, 19th floor |

**PLAINTIFFS' RESPONSE TO QUESTIONS RAISED IN ORDER REQUIRING SUPPLEMENTAL EXPLANATION**

The Court asked Plaintiffs to respond to three questions: (1) where specifically in the record they made clear that their requested injunction included the destruction of the stecklings; (2) how the injunction should be enforced against third-party SESVanderHave; and (3) whether this Court retains jurisdiction to take any further action unless and until the Ninth Circuit rules on Defendants' appeal.

### I. Plaintiffs' Proposed Remedy Evolved to Reflect the Changing Circumstances in the Case.

Plaintiffs' filed their Motion for Preliminary Injunction and Temporary Restraining Order ("TRO") within days of APHIS' September 2010 announcement that it intended to grant permits authorizing production of Roundup Ready sugar beet ("RRSB") stecklings. Plaintiffs initially proposed the Court enjoin Defendants from issuing permits and halt the proposed planting. Pls.' 9/11/10 Mot. for Prelim. Inj. and TRO (Dkt. No. 11) at 17; 9/11/10 Proposed TRO (Dkt. No. 17); Pls.' 9/16/10 Reply in Support of Prelim. Inj. and TRO (Dkt. No. 45) at 15.

Plaintiffs were forced to change their position on the appropriate remedy once it became apparent that Intervenors had rushed to complete planting. Enjoining Defendants and halting RRSB steckling production was no longer an option. The only remedy from that point forward was destruction of the illegally planted crop. At first, destroying the illegally planted stecklings by plowing them under (and allowing production of conventional seed) seemed a viable option, but, as Intervenors' continued opposition progressed over two and then three months, it eventually became clear that plowing under would no longer guarantee the stecklings' destruction. Plaintiffs did, however, specifically and consistently ask for destruction:

- "Plaintiffs request this Court restore the *status quo ante* by ordering the immediate **destruction** of the recently planted RRSB stecklings..." Pls.' 9/24/10 Opp'n to Proposed Amicus Br. (Dkt. No. 80) at 10;

- "The crops should be **plowed under** immediately, so that Intervenors, instead of complaining later about how they have once again painted themselves into a corner, may proceed to plant a legal seed crop if they wish." Pls.' 9/27/10 Reply to Proposed Defendant-Intervenors Opp'n to Pls.' Prelim. Inj. and TRO (Dkt. No. 88) at 10;

- "**Destroying** an unlawfully planted crop under these circumstances is fully consistent with the public interest." Pls.' 10/4/10 Supp. Remedies Br. (Dkt. No. 99) at 11;

- Request for the "the restoration of the status quo ante by **plowing under** the RRSB already planted." Pls.' 10/15/10 Supp. Remedies Reply (Dkt. No. 119) at 7;

- "Injunctive relief ordering the **destruction** of the illegal RRSB crops … is appropriate." Pls.' 10/15/10 Supplemental Remedies Reply at 14.

(emphasis added). Plaintiffs maintained this position through the injunction proceedings, using the terms "destruction," "removal," and "plow under" interchangeably.

Plaintiffs' believed that the Court similarly understood the scope of the proposed remedy. For instance, during the October 22, 2010 oral arguments on the topic of remedies, this Court suggested the possibility that the illegally planted steckling would be "plowed under" when discussing the matter with counsel for Betaseed, Harry Zirlin:

> Mr. Zirlin: …research stecklings may have more value than the commercial stecklings … we would want to get you that information because hypothetically if the Court were to say you wanted the Court, the Court wanted to return the situation to the status quo and that you looked at the information and you understand that Betaseed ought to – can't bring myself to say it, but Betaseed…
>
> The Court: Plow under.
>
> Mr. Zirlin: Plow under. Thank you, your Honor.

10/22/10 Remedies Hearing Transcript Pg. 38:13-22. Given this exchange, it appeared that all parties were in agreement about what, precisely, was at stake.

Defendants' position appears no different. While they now seize upon the Court's phrasing to represent to Plaintiffs and the public that "removal from the ground" does not equal destruction, their Objections and Emergency Motions tell a drastically different story. For instance, in their Objections to Plaintiffs' Proposed Preliminary Injunction Order, Federal Defendants paradoxically claim that "[t]here is nothing in the Court's order about requiring the destruction of the stecklings," while admitting in the very next sentence that the Court's order for "removal" is essentially the same as an order for "destruction." Fed. Defs.' Objections to Pls.' Proposed Prelim. Inj. Order at 1 ("In any event, the removal of the stecklings likely will immediately destroy many of the stecklings because they will not be able to survive removal at this time."). They make similar admissions in their Emergency Motion for a Stay, stating that, "[d]estroying the stecklings will cause the intervenor seed companies direct financial harm, as

they will explain in their motion for a stay. Fed. Defs.' Emergency Motion for a Stay Pending Appeal at 19. Intervenors' Emergency Motion for a Stay is also premised on the assertion that this Court's order to "uproot" the RRSB stecklings will destroy the crop and cause financial harm to Intervenors. Intervenors Emergency Motion for Stay Pending Appeal at 20 ("Absent a stay, the mandatory preliminary injunction will force Appellants to uproot millions of dollars worth of crops..."); *Id*. at 6 ("The pointless uprooting of the stecklings will cost Intervenor-Appellants years of research and millions of dollars."). Moreover, the lengthy stay motions undoubtedly were drafted before the Court's order was drafted, demonstrating that Defendants and Intervenors knew very well that if the Court issued an injunction, destruction of the stecklings was on the table.

Indeed, unless Defendants and Intervenors anticipated destruction of the crop, they had no reason to seek an emergency stay, particularly since Intervenors routinely "remove from the ground" their stecklings every December, and transplant them back into the ground in early spring, as part of the process of producing seed. Lehner Testimony, 11/2/2101 Tr. at 118-120 ("By December they're ready to harvest. And we begin harvesting in December, and moving the stecks into storage."). To allow Intervenors to simply remove the stecklings from the ground and store them would be to allow them to proceed with business as usual, in complete disregard of the law, without any consequences whatsoever.

## II. Federal Defendants May Issue Emergency Action Notifications to SESVanderHave.

The Court may well have authority to directly order the destruction of SESVanderHave's stecklings. *Bresgal v. Brock*, 843 F.2d 1163, 1169 (9th Cir. 1987) ("There is no general requirement that an injunction affect only the parties to the suit."). However, Federal Defendants control permits granted under the Plant Protection Act ("PPA") and have the statutory authority to revoke the permits and require destruction at any time. The PPA grants the Secretary of Agriculture the authority to *order* an owner to treat or destroy any plant, biological control organism, plant product, plant pest, noxious weed, article, or means of conveyance subject to

action under its jurisdiction without cost to the Federal Government and in the manner the Secretary considers appropriate. 7 U.S.C. § 7714(b); *see also* Evidentiary Hearing Tr. 383:5-16 (indicating APHIS has authority to quarantine, destroy or plow under plant material.).

APHIS may issue an Emergency Action Notification ("EAN") in order to direct a permit holder, and any of their agents, employees, or others acting on their behalf, to quarantine or destroy plant material. *See* Evidentiary Hearing Tr. 383:5-16; *see also* Fed. Def.'s Objections to Pls.' Proposed Prelim. Inj. Order at 2. ("APHIS could issue an EAN within several days of the Court's final order regarding remedy. Depending on the exact remedy ordered, APHIS would draft EANs that accomplish the goal of removal…"). APHIS could therefore direct such a notification to SESVanderHave, or any other non-party permit holder. APHIS has in fact suggested the use of EANs in this case to effect just this outcome:[1] "There are four permit holders, and one of them, SES VanderHave, is not a party. It will be sufficient, for the purposes of notifying the growers who are growing stecklings under the permits, to send an EAN to each of the permit holders." Fed. Def.'s Objections to Pls.' Proposed Prelim. Inj. Order at 2-3.

**III. The Court Retains Jurisdiction to Modify the Injunction.**

FRCP 62(c) states: "While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. Proc. 62(c). The Ninth Circuit has interpreted this rule to allow modifications to an injunction, pending appeal, that effectuate the underlying purpose of the original requirements and do not materially alter the status of the pending appeal. *See Natural Resources Defense*

---

[1] Although Plaintiffs in their proposed injunction included SESVanderHave among the entities to be directly ordered to destroy their stecklings, this was in an abundance of caution, supplementing the use of Emergency Action Notifications in the next paragraph. Plaintiffs have no objection to deleting the former in favor of the latter with respect to SESVanderHave. There is no reason not to order Intervenors directly.

*Council, Inc. v. Southwest Marine Incorporated*, 242 F.3d 1163, 1167 (9th Cir.2001).

This Court has asked Plaintiffs for supplemental explanation in order to modify the Order for Preliminary Injunction. The entry of the Order for Preliminary Injunction would merely clarify and effectuate the Court's Order Regarding Remedies on Plaintiffs' Motion for Preliminary Injunction, providing specific instruction for how to carry out the Court's order. This is precisely what occurred in *Southwest Marine Incorporated*. Plaintiffs in that case sued the defendants for discharging in violation of the Clean Water Act, and the district court issued an injunction requiring defendants to perform testing and capture all stormwater runoff. Defendants appealed the injunction. 242 F.3d 1163. The district court then heard arguments on the specifications for carrying out the testing and capturing requirements in the injunction and modified its original injunction to include more onerous provisions. *Id*. at 1165-66. On Appeal, the Ninth Circuit held, "The district court's post-judgment modifications to the injunction were minor adjustments that effectuated the underlying purposes of the original requirements." *Id*. at 1167. They additionally stated that while a modification order under FRCP 62(c) cannot "adjudicate anew the merits of the case," the challenged modifications to the injunction "did not materially alter the status of the consolidated appeal." *Id*. at 1166-67.

Similarly, *Meinhold v. Department of Defense* also involved modifications to an injunction after appeal. 34 F.3d 1469 (9th Cir.1993). The Ninth Circuit held that the district court had jurisdiction "to clarify its original injunction and to supervise compliance." *Id*. at 1480 n.14 (citing *Hoffman v. Beer Drivers & Salesmen's Local Union No. 888,* 536 F.2d 1268, 1276 (9th Cir.1976)) (appeal from supervisory order does not divest district court of jurisdiction to continue supervision and modify order as necessary). The appeals filed by Defendants do not prohibit this Court from clarifying the procedure by which the injunction should be carried out.

**IV. Contrary to Federal Defendants' Claims, the Proposed Preliminary Injunction Order is Narrowly Tailored to Address the Well-Documented Risks to Plaintiffs and the Environment.**

Federal Defendants tirelessly return to the same failed arguments based on segmentation in their claims that removal and storage of stecklings would sufficiently address the likely harms

to Plaintiffs and the environment. It matters not that the current "stecklings cannot flower and produce seed until next spring" (Fed. Def.'s Objections to Pls.' Proposed Prelim. Inj. Order at 1); the Court has time and again found that the harm that must be considered is the harm of the entire cycle of RRSB production. Order Regarding the Remedies on Pls.' Mot. for Prelim. Inj. at 3. Further, Plaintiffs have proven that APHIS' and Intervenors' containment protocols are "insufficient" and "ineffective," to say the least. *Id*. at 5. Simply uprooting and storing stecklings, without ensuring their complete destruction, will merely initiate the next step in this flawed production cycle, and along with it the many opportunities for cross-contamination and environmental harms.

Lastly, Federal Defendants' implication that steckling removal requires an environmental analysis is outrageously misleading, both legally and factually. First, NEPA does not apply to court decisions, it applies to federal agency actions. 42 U.S.C. 4321 et seq.; 40 CFR 1508.12. The Court is entirely within its power to order destruction of the stecklings without first submitting its proposed order to APHIS for review. Second, melodrama aside, driving "tractor mower[s] … repeatedly over muddy fields" is routine practice, and applying a single herbicide treatment to kill a plant pest hardly rises to the level of environmental harms contemplated in the alternative, which include the likelihood of genetic contamination of both organic and conventional crops, the destruction of certain organic industries, loss of consumer choice, and many others.

**CONCLUSION**

For the above-state reasons, Plaintiffs respectfully request this Court grant Plaintiffs' Proposed Preliminary Injunction Order, without modification.

Respectfully submitted this 3rd day of December, 2010.

> GEORGE A. KIMBRELL (*Pro Hac Vice*)
> PAIGE M. TOMASELLI State Bar No. 237737
> KATERYNA L. RAKOWSKY State Bar No. 246248
> Center for Food Safety
> 2601 Mission St., Suite 803
> San Francisco, CA 94110
> T: (415) 826-2770 / F: (415) 826-0507

Case No. 3:10-cv-04038-JSW
PLAINTIFFS' RESPONSE TO QUESTIONS RAISED IN ORDER REQUIRING SUPPLEMENTAL CLARIFICATION

Emails: gkimbrell@icta.org
ptomaselli@icta.org
kateryna@icta.org

/s/
PAUL H. ACHITOFF (*Pro Hac Vice*)
Earthjustice
223 South King Street, Suite 400
Honolulu, Hawai'i 96813
T: (808) 599-2436 / F: (808) 521-6841
Email: achitoff@earthjustice.org

*Counsel for Plaintiffs*